**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHELLE R. BOGGS,**

     **Plaintiff,**

                            **Civil Action 2:14-cv-613**

  **v.**                        **Judge Edmund A. Sargus**

                             **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michelle R. Boggs, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability Insurance Benefits and Supplemental Security Income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 6).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's decision and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.   BACKGROUND[1]

In 2008, Plaintiff was found disabled by an Administrative Law Judge for a closed period of disability beginning December 14, 2004 and ending March 29, 2007.  (R. at 14.)  The prior

---

[1]For the sake of brevity, the Undersigned provides a brief outline of the procedural history and will discuss the record evidence as necessary to address Plaintiff's contentions of error within the Analysis Section.

Administrative Law Judge found that Plaintiff was able to perform a range of sedentary work beginning March 29, 2007.  *Id.*

Plaintiff re-filed applications for benefits on September 16, 2010, alleging that she has been disabled since December 14, 2004 as a result of injuries sustained in an automobile accident.  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On March 19, 2012, Plaintiff amended her onset date to January 11, 2008.  (R. at 215.)  Administrative Law Judge Karen B. Kostol (the "ALJ") held a hearing on October 29, 2012.  Plaintiff, who was represented by counsel, and Vocational Expert Mary Beth Kopar (the "VE") appeared and testified.  (R. at 47-100.)

On November 28, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 14-35.)  The ALJ found that Plaintiff met the insured status requirements through June 30, 2011.  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since

---

[2]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

January 11, 2008, the alleged onset date.  (R. at 17.)  At step two, the ALJ found that Plaintiff

had the severe impairments of history of motor vehicle accident with injuries to the ankle, leg,

and pelvis; cervical myalgia; depression; and anxiety.  (*Id.*)  At step three, she found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.*)  At step four of the sequential process, the ALJ assessed Plaintiff's residual functional

capacity ("RFC").[3]  The ALJ explained as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the [Plaintiff] can never climb ladders, ropes or scaffolds, crouch, kneel, or crawl.  She can occasionally climb ramps or stairs, balance, and stoop.  She must avoid concentrated exposure to extreme cold, extreme heat, and hazards such as unprotected heights.  The [Plaintiff] is capable of work in a low stress job, defined as having only occasional decision making required, occasional changes in the work setting, and no strict production quotas. The [Plaintiff] is capable of frequent reaching with the left arm, frequent handling with the left hand, and occasional rotation, flexion, and extension of the neck. The job must accommodate the use of a leg brace or other assistive device for ambulation or balance.  The work must require no more than occasional use of foot control pedals with the right foot, and must allow the option of standing and/or walking for 30 minutes, or sitting for 30 minutes, alternatively without being off task.

(R. at 19.)  In reaching this RFC, the ALJ assessed the greatest weight to the state-agency

physicians' opinions located in the record at pages 120-134, 136-150, 152-165, 167-180, 422,

423.  (R. at 33.)   The ALJ found that these opinions, while not based on examination of Plaintiff

or a treating relationship, are the most consistent with the medical evidence in the record as a

whole.  She also stated that their opinions reflect a familiarity with the Social Security

Administration's disability program.  She assessed "some weight" to consultative examiner

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).
      [3]Plaintiff does not dispute the mental limitations assessed by the ALJ.

William D. Padamadan M.D.'s opinion (R. at 390-97); "some weight" to state-agency

psychologist Douglas Pawlarczyk, Ph.D's opinion (R. at 398-411); "weight" to state-agency

physician W. Jerry McCloud, M.D.'s opinion that Plaintiff can engage in light work with

postural and push/pull limitations (R. at 412-19); "some weight" to consultative evaluator David

R. Bousquet, M.Ed.'s opinion (R. at 501-07); and "some weight" to the opinions of Drs. Ahmad

and Junko contained in Plaintiff's treatment notes (R. at 468-69, 477).  (R. at 33.)  Dr. Ahmad

also submitted medical opinions in a cervical spine questionnaire, which the ALJ assigned "some

weight."  *Id.*  The ALJ stated that "Dr. Ahmad must think that the [Plaintiff] has received

physical therapy for her cervical complaint when in fact, she has not."  *Id.*  Finally, the ALJ

found that Plaintiff was only partially credible because her testimony was not consistent with the

objective evidence of the record.  (R. at 22.)

    At step four, relying on the VE's testimony, the ALJ determined that Plaintiff is not

capable of performing past relevant work.  The ALJ concluded, however, that other jobs exist in

significant numbers in the state and national economy that Plaintiff can perform based on the

VE's testimony.  (R. at 33-34.)  She therefore concluded that Plaintiff was not disabled under the

Social Security Act.  (R. at 35.)

    On May 2, 2014, the Appeals Council denied Plaintiff's request for review and adopted

the ALJ's decision as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely

commenced the instant action.

## II.    STANDARD OF REVIEW

    When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

4

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

5

### III.    ANALYSIS

In her Statement of Errors, Plaintiff first contends that the ALJ failed to follow the treating physician rule when assessing Dr. Ahmad's opinion.  She also contends that the ALJ failed to properly evaluate Plaintiff's credibility.  For the reasons that follow, the Undersigned **RECOMMENDS** that this case be **REVERSED** and **REMANDED** for the ALJ's failure to provide good reasons, supported by substantial evidence, for discounting the opinions of Plaintiff's treating physician, Dr. Ahmad.[4]

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

---

[4]This finding obviates the need for an in-depth analysis of Plaintiff's contention of error related to the ALJ's credibility assessment.  Thus, the Undersigned need not, and does not, resolve the alternate basis Plaintiff asserts to support reversal and remand.  Nonetheless, the Commissioner is free to consider this contention should the case ultimately be remanded.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

7

Such is the case here.  The parties do not dispute that Dr. Ahmad qualifies as a treating source subject to *Wilson's* good-reason rule.  They do, however, disagree over whether the ALJ provided good reasons, supported by substantial evidence, for rejecting Dr. Ahmad's opinions as controlling and assigning them only some weight.

In her decision, the ALJ considered the medical opinions in the record and explained the weight she assessed to them as follows:

> The greatest weight is given to B-7A, B-9A, B-11A, B-13A, B-7F, and B-8F [state-agency opinions].  These opinions, though not based on examination of the [Plaintiff] or a treating relationship, are most consistent with the medical evidence of record as a whole.  They also reflect a familiarity with the Social Security Administration disability program.
>
> The [ALJ] has given some weight to Exhibit B-3F [consultative examiner's opinion] and B-4F [state-agency opinion], but it is an underestimate of the [Plaintiff's] mental limitations.  The [ALJ] has given weight to Exhibit B-5F [state-agency opinion], light with postural and push/pull limitations.  The [ALJ] has also given some weight to the opinion of the consultative evaluator, Dr. Bousquet (Exhibit B-16F).
>
> The [ALJ] has also give[n] some weight to Dr. Ahmad's opinion and Dr. Junko's opinion at B-12F, pg. 1, 3; B-13F, pg. 3.
>
> As to the cervical spine impairment questionnaire by Dr. Ahmad (Exhibit B-25), the [ALJ] gives the opinion some weight.  However, the [ALJ] notes that Dr. Ahmad must think that the [Plaintiff] has received physical therapy for her cervical complaints when in fact, she has not.

(R. at 33.)  Thus, the ALJ assigned "some weight" to Dr. Ahmad's opinions.  She failed, however, to explain why Dr. Ahmad's opinions were not entitled to controlling weight or to provide "good reasons" for the weight she ultimately assigned them.  The ALJ stated only that "Dr. Ahmad must think that the [Plaintiff] has received physical therapy for her cervical complaints when in fact, she has not" when explaining why his opinions were entitled to "some weight." *Id.*  This reason, alone, does not demonstrate that Dr. Ahmad's opinions related to

8

Plaintiff's physical limitations are not supported by the medical evidence or that they are inconsistent with the substantial evidence in the case record.  Thus, the ALJ's reasoning is not sufficiently specific to comply with *Wilson's* "good reason" requirement.  *See Friend*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (internal quotation omitted).

Moreover, even if the ALJ's purported reason for discounting Dr. Ahmad's opinions could be considered a "good reason," it is not supported by substantial evidence.  Within the cervical spine impairment questionnaire, Dr. Ahmad discussed not only Plaintiff's cervical spine impairments, but also her impairments related to her ankle, knee, and back.  Indeed, in response to the prompt "List other treatment (e g surgery, physical therapy) and complications, if any," Dr. Ahmad noted "Surgery- [left] knee, [left] femur (rod) – [left] foot, [right] ankle" and that Plaintiff "[h]as done extensive physical therapy."  (R. at 577.)  Thus, Dr. Ahmad's reference to physical therapy may not have been related to treatment of Plaintiff's neck, but rather her lower extremities.  The record is therefore ambiguous as to whether Dr. Ahmad "must think that the [Plaintiff] has received physical therapy for her cervical complaints when in fact, she has not." (R. at 33.)  Accordingly, this reason alone is insufficient for the ALJ to reject Dr. Ahmad's opinion as controlling and to assess his opinion only "some weight," and is not supported by substantial evidence.

Additionally, to the extent the ALJ intended to cite the inconsistencies between the medical opinions in the record as a reason for rejecting Dr. Ahmad's opinions, this reason is inadequate as a matter of law.  *See Hensley*, 573 F.3d at 267 ("Nothing in the regulations

9

indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). The Sixth Circuit has explained that such reasoning "would seriously undermine the Commissioner's position that controlling weight ordinarily should be given to the opinion of the treating physician" and that if such reasoning sufficed, "it would be a rare case indeed in which such weight would be accorded." *Id*.

In her Memorandum in Opposition, the Commissioner contends that the ALJ provided other good reasons for discounting Dr. Ahmad's opinions. The Undersigned disagrees. For example, the Commissioner cites to the ALJ's finding that "there is no evidence of muscle atrophy in the lower extremities, which suggests that the [Plaintiff] moves about on a fairly regular basis and that she performs more activities than reported." (R. at 23.) Here, the Commissioner is conflating the ALJ's analysis of Plaintiff's credibility with her assessment of Dr. Ahmad's opinion. The ALJ's findings in this regard were an attack on Plaintiff's credibility, not Dr. Ahmad's medical opinion.

The Commissioner also suggests that because Plaintiff's MRI of the brain and MRA of the neck and head were normal, Dr. Ahmad provided no medical explanation for Plaintiff's "allegedly disabling neck pain" and that "the ALJ's extensive discussion of the medical evidence, including Dr. Ahmad's notes, revealed other good reasons for the ALJ's distrust of his opinion." (Memo in Opp 5, ECF No. 13) The Commissioner, however, is impermissibly attempting to assert *post hoc* rationalizations for the ALJ's decision to assign only some weight to Dr. Ahmad's opinions. *See Barker v. Comm'r of Soc. Sec.,* No. 3:07-CV-174, 2008 WL 4444739, at *10 (S.D. Ohio Sept. 29, 2008) (finding that "post-hoc rationalizations are especially

10

impotent of persuasive force in overcoming the ALJ's failure to provide good explanations for rejecting the opinions provided by Plaintiff's long-term treating physician. . .").  Further, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely."  *See Wilson*, 378 F.3d at 546.  The Sixth Circuit explained that "a procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Id.* (internal citations omitted).  The Commissioner's contentions, therefore, do not overcome the ALJ's failure to adequately explain the weight given to Dr. Ahmad's opinions in her decision. Accordingly, because the ALJ failed to follow proper procedure, remand is necessary despite the fact that the ALJ's conclusion may ultimately be justified based upon the record evidence.

Furthermore, the ALJ's violation of the good reason rule was not harmless error.  The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error.  378 F.3d at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ."  *Id.*  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation."  *Id.*  Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to

comply with the good-reason requirement. *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. A'ppx 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

In this case, Dr. Ahmad's opinions are not "so patently deficient that the Commissioner could not possibly credit [them]." *Wilson*, 378 F.3d at 547. Dr. Ahmad indicated that his opinions are based on clinical findings, including decreased flexion and extension in Plaintiff's neck; sensory loss in her hands and knees; tenderness in her ankles, knees, and neck; muscle spasms in her neck; muscle weakness in her lower extremities; and crepitus in her knees. (R. at 573-74.) The record evidence also demonstrates that Plaintiff was noted to walk with a cane and ankle brace on several occasions. Further, an x-ray of her knee revealed "moderately marked narrowing of the medial compartment of the knee consistent with degenerative cartilaginous disease," (R. at 397) and an x-ray of her right ankle showed marked osteoarthtrosis throughout the ankle joint. *Id.* Given the evidence in the record, Dr. Ahmad's opinions cannot be considered "patently deficient."

Second, the ALJ's decision is not consistent with Dr. Ahmad's opinions. (*Compare* R. at 19 *with* R. at 576.) Finally, her decision does not otherwise meet the goals of *Wilson*'s reason giving requirement. The ALJ's failure to comply with the requirements of the treating source rule therefore was not harmless error.

In sum, the Undersigned finds that the ALJ's failure to give good reasons for not according controlling weight to Dr. Ahmad's opinions warrants remand. *See Hensley*, 573 F.3d

12

at 267 (quoting *Wilson*, 378 F.3d at 545 (internal quotations omitted)) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). On remand, a proper analysis of the record might not support giving controlling weight to the opinions of Dr. Ahmad. Even if Dr. Ahmad's opinions are not entitled to controlling weight, they must still be weighed in accordance with the prescribed regulations. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013). Accordingly, the Undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner and the ALJ.

## IV.  CONCLUSION

For the above-stated reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's decision and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## V.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

13

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: July 27, 2015                                   */s/ Elizabeth A. Preston Deavers*
                                                                  Elizabeth A. Preston Deavers
                                                                  United States Magistrate Judge

14